IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| BRENDA LEE LOCKETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 313-034 |
| ) | |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security ) | |
| Administration,[1] ) | |
| ) | |
| Defendant. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Brenda Lee Lockett ("Plaintiff") appeals the decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

I.  **BACKGROUND**

Plaintiff protectively applied for DIB and SSI on September 15, 2009, alleging a disability onset date of September 5, 2006. Tr. ("R"), pp. 138-47. The Social Security

---

[1] For ease of reference, the Court will hereinafter refer to the Acting Commissioner as "Commissioner."

Administration denied Plaintiff's applications initially, R. 66-77, and on reconsideration, R. 80-85. Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"), R. 100-01, and the ALJ held a hearing on October 25, 2011. R. 34-79. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Dennis P. Conroy, a Vocational Expert ("VE"). Id. On December 2, 2011, the ALJ issued an unfavorable decision. R. 17-33.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since September 5, 2006, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* & 416.971 *et seq.*).

2. The claimant has the following severe impairment: borderline intellectual functioning (20 C.F.R. §§ 404.1520(c) & 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is an individual whose borderline intellectual functioning limits her to performing work activities with a specific vocational preparation of 1-2. While her concentration may drift for up to 1/3 of an eight-hour workday if the work is repetitive, routine, or boring, she can pay enough attention to details to meet the general productivity requirements of the job(s) within the same workday. She should not be required to set independent work goals. She should avoid constantly changing or fluid work environments. In light of this RFC, the claimant is capable of performing past relevant work as a scrap sorter (D.O.T. #929.687-022) which is medium (light as performed)/SVP2 work.

R. 22-27.

Because the ALJ determined that Plaintiff could perform her past relevant work, the

2

sequential evaluation process stopped, and the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from September 5, 2006, through December 2, 2011 (the date of the decision). R. 27. When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in his determination that she did not meet or equal Listing 12.05(B) or Listing 12.05(C). (See doc. no. 15 ("Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should therefore be affirmed. (See doc. no. 16 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (*per curiam*). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.  DISCUSSION

Plaintiff argues that she is intellectually disabled because she meets or equals Listing 12.05(B) or Listing 12.05(C) as shown by the entirety of the record evidence, including but

not limited to her IQ scores from 2007 and 2010. (Pl.'s Br., p. 10.) Plaintiff also argues that her asthma satisfies the "other" impairment requirement of Listing 12.05(C).

### A. The Requirements of Listing 12.05(B) and Listing 12.05(C).

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that her condition meets or equals a Listing. Castle v. Colvin, -F. App'x-, 2014 WL 595284, at *3 (11th Cir. 2014) (*per curiam*); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (*per curiam*). In order to show that her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (*per curiam*) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset

of the impairment before age 22."[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00(A) (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014) (*per curiam*); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

The criterion of 12.05(B) is met when a claimant presents "a valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Alternatively, 12.05(C) states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. Thus, a claimant generally meets the Listing 12.05(C) criteria when she, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).

In the context of mental disorders, the regulations provide that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitations." 20 C.F.R. Pt. 404,

---

[2]Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listings. Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499-01 (Aug. 1, 2013) (codified at 20 C.F.R. Parts 404 and 416).

6

Subpt. P, App. 1, 12.00(D)(6)(a). Likewise, the Eleventh Circuit has recognized that "a valid IQ score need not be conclusive of [intellectual disability] where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery, 979 F.2d at 837; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (low IQ scores give rise to presumption of intellectual disability, but such presumption may be rebutted with evidence of daily activities that are inconsistent with diagnosis of intellectual disability); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (*per curiam*) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

### B. The ALJ's Finding at Step Three of the Sequential Process Is Not Supported by Substantial Evidence.

#### 1. The ALJ Did Not Consider All Available Evidence Regarding Plaintiff's IQ Scores.

In discussing Plaintiff's IQ scores, the ALJ acknowledged the requirements of Listing 12.05 and chronologically addressed subparts A through D. R. 23-24. As the parties confine their arguments to 12.05(B) and (C), the Court likewise will restrict its analysis to those two subparts. As the requirement of subpart B for a full scale IQ of 59 or less, the ALJ determined that the full scale IQ of 59 recorded during the April 7, 2010 psychological consultative examination performed by Marvin Long, Ed. D., was not a valid reflection of Plaintiff's capabilities. R. 24. The ALJ cited Dr. Long's statement that Plaintiff was "not as limited as psychometrics suggest," his warning to "be careful and not over interpret" because of problems with responses to certain testing suggesting problems with the results, and his conclusion "[t]his lady is nowhere near as limited as projected today," R. 24 (citing R. 381).) The ALJ also noted Plaintiff's reports to Dr. Long that she had worked at a paper mill for about five years and had done some volunteer work. R. 24, 27. For these same reasons, the

7

ALJ concluded Plaintiff did not meet the first requirement of Listing 12.05(C) because she had no valid verbal, performance, or full scale IQ of 60 through 70. R. 24.

The ALJ went into great detail in his discussion of Dr. Long's consultative examination in 2010, but the decision is most notable for what it does not discuss - a host of other medical opinions in the record from other state agency consultants, as well as an examination by Dr. Long in 2007 that produced a full scale IQ score of 65, (R. 347). According to Social Security Ruling 96-6p, findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. Although ALJs are not bound by the findings of state agency doctors, "they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p. This responsibility to address the opinions of state agency doctors is also codified at 20 C.F.R. §§ 404.1527(e)(2) & 416.927(e)(2).

Numerous courts have recognized this duty to address the opinions of state agency doctors. Wade v. Colvin, No. 3:12-cv-853-J-MCR, 2013 WL 3153846, at *4 (M.D. Fla. June 19, 2013) (remanding to Commissioner, in part, because of failure to explain rejection of part of opinion offered by state agency consultant); Higgins v. Barnhart, 294 F. Supp.2d 1206, 1212 & n.29 (D. Kan. 2003) (collecting cases in support of proposition that "the ALJ is required to evaluate, discuss and explain the weight assigned to . . . a reviewing physician"); Plourde v. Barnhart, No. 02-164-B-W, 2003 WL 22466176, at *4 (D. Me. Oct. 31, 2003) (relying on SSR 96-6p to conclude that "[w]ithout discussion or explanation, the administrative law judge implicitly rejected all

of the foregoing mental limitations (by state agency doctors). He was not free to choose simply to ignore this uncontradicted evidence, or pick and choose from it *sub silentio,* to craft an RFC."), *adopted by* 2003 WL 22722078 (D. Me. Nov. 18, 2003); Goberman v. Apfel, No. 2:99CV316FTM26DNF, 2001 WL 267209, at *3 (M.D. Fla. Mar. 12, 2001) ("The ALJ's decision failed to refute this opinion [of the State agency program physician]. SSR 96-6 requires the ALJ to not only consider the program physician opinions because these physicians are considered experts, but in addition, must state the weight he has given the opinions in their decision.").

Here, the ALJ relied on the opinion of Dr. Long from 2010 to determine that Plaintiff did not have a valid IQ score to meet the requirements of any portion of Listing 12.05. However, the record contained numerous other opinions of state agency doctors that the ALJ failed to acknowledge or assign weight. For example, Dr. Long performed his first evaluation of Plaintiff in 2007, at which time he diagnosed her with "Mixed Mood Disorder sec. to Medical Problems/Finances/Life" and "Mental Deficiency – Mild." At that time, although Dr. Long opined that that there was "no indication of true mental retardation," his full scale IQ assessment for Plaintiff was 65 (R. 347), a score that if valid and accompanied by a physical or other mental impairment imposing an additional and significant work-related limitation of function, would satisfy the criteria of Listing 12.05(C). Although the ALJ explained his reasons for discrediting the full scale IQ of 59 that resulted from Dr. Long's 2010 examination, the ALJ stated that Plaintiff "does not have a valid IQ score in the 60 through 70 range" without mentioning the 2007 test. Thus, although the ALJ discussed his reasons for determining that Plaintiff did not have a valid IQ score to meet the requirements of 12.05(B), he failed to discuss the 2007 IQ score that may have

9

satisfied at least the first part of the requirements for Listing 12.05(C), a full scale IQ score of 60 to 70. The ALJ may not substitute his opinion for that of a medical expert. See Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982) (*per curiam*). The Commissioner's attempt in her briefing on appeal to discredit the scores from 2007 will not suffice because the Court cannot now engage in an administrative review that was not done in the first instance at the administrative level. Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]").

### 2. The ALJ Also Did Not Consider All Available Evidence Regarding "Other" Impairments Relevant to the Listing 12.05 Analysis.

In addition to concluding that Plaintiff did not have a valid IQ score, the ALJ also determined that Plaintiff did not meet the additional requirement of 12.05(C) establishing evidence of another physical or mental impairment that imposed another significant work-related limitation of function. R. 24. However, the ALJ never mentioned two Psychiatric Review Technique Forms completed by non-examining state agency consultants, Doctors Michelle Wierson and Ndiya Nkongho. (R. 417-30 and 385-98.) The Commissioner again makes a post-hoc argument that these two forms support the ALJ's conclusion that Plaintiff did not meet the 12.05 Listing. (Comm'r's Br., p. 7.) However, a review of these forms show a direct conflict with the written decision of the ALJ. For example, both doctors identify an additional impairment, Mixed Mood Disorder, R. 388, 420, that the ALJ dismissed as "over diagnosed *once* by the consultative examiner," Dr. Long. R. 23 (emphasis added, citing R. 382, Dr. Long 2010 examination).

The ALJ also stated that Plaintiff had "no restriction" in her activities of daily living, as she was able to help around the house, handle the affairs of her children and help with her

grandchildren, perform some limited cooking, take care of her personal hygiene, and walk, sit down, and stand up without obvious difficulty. R. 24-25, 27. However, both Drs. Wierson and Nkongho opined she had mild restrictions of activities of daily living. R. 395, 427. Problematically, it does appear that the ALJ may have adopted some of the opinions of these two state agency doctors, for example in determining that Plaintiff had mild difficulties in social functioning, (R. 395, 427), but the ALJ did not acknowledge the basis for his adoption of this mild restriction. R. 25.

Equally troubling is the ALJ's treatment of Plaintiff's asthma. At step two of the evaluation process, the ALJ concluded that Plaintiff's asthma was not severe because the record did not disclose any asthma attacks since the middle of 2009, and "[p]rior to that, there was no evidence of asthma exacerbations that landed the claimant in the hospital." R. 23. To the contrary, the record contains medical records from Fairview Park Hospital showing Plaintiff spent a week in the hospital in September, 2006 after presenting to "the emergency room with respiratory distress secondary to bronchial asthma exacerbation. When [Plaintiff] came to the emergency room, [she] was initially in severe respiratory distress and was intubated." R. 314. Also, a pulmonary function test performed in 2007 showed that Plaintiff, at age 41, had the lungs the age of 91-year-old person. R. 325. Both Dr. Nkongho and Dr. Wierson also noted in their Forms that "possible interference from asthma" might impact Plaintiff's ability for work. R. 397, 429.

Plaintiff argues that her asthma is "a severe impairment causing additional and significant limitations." (Pl.'s Br., p. 11.) To satisfy the additional impairment prong of Listing 12.05(C), Plaintiff needs to show that the impairment "significantly limits [her] physical or mental ability to do basic work activities, *i.e.*, is a 'severe' impairment(s), as

defined in §§ 404.1520(c) and 416.920 (c)." Willard v. Colvin, No. 5:12-cv-03536-JHE, 2014 WL 1664300, at *4 (N. D. Ala. Apr. 25, 2014) (citing Listing 12.00(A).) As set forth below, the severity test is not stringent.

A severe impairment significantly limits one's ability to perform "basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R.§§ 404.1521(b) & 416.921(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R.§§ 404.1521(b) & 416.921(b). Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*).

The severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (describing severity test as a "reasonable administrative convenience designed to screen out groundless claims"). In fact, the Eleventh Circuit describes step two as the "slight

abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d at 920). Under this test, "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with [her] ability to work irrespective of [her] age, education or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*).

Here, the proper analysis of Plaintiff's asthma has several ramifications in this case. First, the ALJ determined at step two that Plaintiff's asthma was not a severe impairment. As discussed above, the ALJ relied in part on a misstatement of the record that Plaintiff had never been in the hospital because of asthma exacerbations. R. 23. Second, once the ALJ determined that Plaintiff's asthma was a non-severe impairment, he never addressed it as a possible additional impairment under Listing 12.05(C), and he discounted her subjective complaints concerning her asthma when formulating Plaintiff's RFC. See R. 26. Third, although Plaintiff testified about her asthma and the problems she was having paying for any medicine to treat the problem, R. 48, 58, the ALJ simply stated that Plaintiff's asthma "must be in remission, or her medications control it very well because there have been no complaints to doctors about the situation." R. 23. Fourth, as discussed above, the ALJ completely failed to discuss the opinions of Dr. Wierson and Dr. Nkongho, both of which noted possible interference from asthma with Plaintiff's ability to work. R. 397, 429.

In sum, the ALJ failed to properly address the entirety of the medical evidence of record in this case. "It is not enough to discover a piece of evidence which supports [the administrative] decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole." McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986); see also Martin, 748 F.2d at 1033 (rejecting misuse of one set of positive test results, to the exclusion of all other evidence of record, to find claimant not disabled when the ignored evidence suggested other severe impairments). Accordingly, this case should be remanded for proper consideration, in the first instance at the administrative level of review, of the entirety of the record evidence.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 12th day of June, 2014, at Augusta, Georgia.

_/s/ Brian K. Epps_
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA
